UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-0054 JGB (SPx)** | Date | March 19, 2026 |
|---|---|---|---|
| Title | *Jesus Ramirez v. Caleres, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) DENYING Plaintiff's Motion for Remand (Dkt. No. 18); (2) DENYING-AS-MOOT Defendant's Ex Parte Application (Dkt. No. 24.); and (3) VACATING the March 23, 2026, Hearing (IN CHAMBERS)**

Before the Court is a Motion for Remand filed by Plaintiff Jesus Ramirez.  ("Motion," Dkt. No. 18.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.  The Court **DENIES-AS-MOOT** Defendant's Ex Parte Application.  (Dkt. No. 24.)  The Court **VACATES** the hearing set for March 23, 2026.

## I.    BACKGROUND

On September 19, 2025, Plaintiff filed a Complaint in the Superior Court of California for the County of San Bernardino against Defendant Caleres, Inc. and Does 1-25.  ("Complaint," Dkt. No. 1-1.)  The Complaint was served on Defendant on November 12, 2025.  (Mot. at 2.)  The Complaint alleges nine causes of action: (1) violation of California Labor Code ("CLC") §§ 1194, 1197, and 1197.1; (2) violation of CLC §§ 510 and 1198; (3) violation of CLC §§ 226.7 and 512(a); (4) violation of CLC §§ 226.7; (5) violation of CLC §§ 204 and 210; (6) violation of CLC § 226(a); (7) violation of CLC §§ 201, 202, and 203; (8) violation of CLC §§ 2800 and 2802; and (9) violation of California Business & Professions Code §§ 17200, et seq.  (Compl.)

On January 2, 2026, Defendant removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. §§ 1332(d) and 1453.  ("Notice of Removal," Dkt. No. 1.)  On February 3, 2026, Plaintiff filed the instant Motion.  (Mot.)

Defendant opposed the Motion on February 20, 2026.  ("Opposition," Dkt. No. 21.)  Plaintiff replied in support of the Motion on March 9, 2026.  ("Reply," Dkt. No. 23.)

## II.    LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs."  Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  "In determining the amount in controversy, courts first look to the complaint.  Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Id. at 1197 (quotations omitted).   "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."  Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment.  A factual attack "contests the truth of the . . . allegations" themselves.  Id. (citation omitted).  "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."  Id.  (quoting Ibarra, 775 F.3d at 1197).  A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."  Harris v. KM Indus., Inc., 980 F.3d 694, 700 (9th Cir. 2020) (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence")).

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014).  But if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id.  The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount."  Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).  The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal."  Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's

theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

### III. DISCUSSION

Plaintiff raises two arguments: (1) that Defendant's removal is untimely because Defendant possessed all information necessary to ascertain removability on October 30, 2025; and (2) that Defendant has failed to prove that the amount in controversy exceeds $5 million as required by CAFA. (Mot. at 7, 13.)

### A. Timeliness of Removal

Plaintiff argues that Defendant failed to remove the case within 30 days of being served with the Complaint, rendering removal untimely. (Mot. at 7.) In a CAFA case, "[28 U.S.C.] §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013). Those two periods are:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .

> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b).

It is true that Defendant did not file its Notice of Removal until 52 days after it was served. (Id. at 2.) But Plaintiff's arguments as to when the clock started ticking on removal are unavailing. Rather than contend that his pleadings provided sufficient notice regarding amount in controversy to have triggered one of the 30-day clocks, Plaintiff focuses on when Defendant,

---

through its own documents, had sufficient information to know the amount in controversy exceeded $5 million.

Defendant's Senior Director of Total Rewards extracted 19 Microsoft Excel spreadsheets from Defendant's electronic HRIS, timekeeping, and payroll systems and transmitted those documents to outside counsel on October 30, 2025, and December 15, 2025. (Mot. at 2; Declaration of Becky Helvey ("Helvey Decl."), Dkt. No. 8.) The October 30, 2025, transmission included 18 of the 19 spreadsheets transmitted. (Id.) Magdalena Sudibjo, a data analyst employed by Defendant's Counsel, received these files on October 31, 2025. (Mot. at 3; Declaration of Magdalena Sudibjo ("Sudibjo Decl."), Dkt. No. 6.) Sudibjo used these documents to identify 1,380 putative class members, 74,313 workweeks, 362,036 shifts over 3.5 hours, 349,155 shifts over 5 hours, an average hourly rate of $20.78, and 740 separated employees with an average hourly rate of $20.60 working an average of 8.3 hours per shift. (Id. at ¶¶ 8-13.) Plaintiff contends that, with this information in hand, Defendant had all it needed to make its calculations about the amount in controversy, yet waited 64 days after the files were sent and 63 days after Sudibjo received them to file the notice of removal. (Mot. at 3.)

Plaintiff makes much of the fact that Defendant did not explain the reason for the delay. He also suggests that Defendant strategically chose to remove the case after the new year when the 2025 fiscal year ended, maximizing the alleged damages calculation. (Mot. at 3-4.)

Helpfully, the Ninth Circuit has repeatedly analyzed the issue before the Court. Where a pleading is "'indeterminate in the sense that the face of the complaint does not make clear whether the required jurisdictional elements are present," the 30-day clock does not start ticking. Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013). In order "[t]o avoid saddling defendants with the burden of investigating jurisdictional facts," the Ninth Circuit has "held that 'the ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin," including in CAFA cases. Id. (internal citations omitted). Circuit caselaw suggests that, even when a defendant already has or promptly learns information on its own supporting removal, if that information has not been provided by plaintiff the clock does not start:

> For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is **put on notice of removability by a plaintiff**. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own. Similarly, a plaintiff's ignorance of the citizenship of would-be class members **should not defeat removal if defendant independently knows or learns that information**.

Roth, 720 F.3d at 1125 (emphasis added). By referring to instances where a defendant "independently knows **or** learns that information," the Court contemplated the permissibility of removal at any point based on a defendant's knowledge—whether known before, when, or after the complaint is filed—so long as that information is not furnished by a plaintiff. Id. (emphasis added).

Nor is strategery disqualifying. This is because "plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." Id. at 1126.[1] Plaintiff could have triggered the 30-day removal period himself if he simply provided more information in the complaint or an accompanying document.

Ninth Circuit caselaw makes clear that Defendant's removal was timely, regardless of when Defendant knew the case was removable based on its own records.

## B. Amount in Controversy

Plaintiff next argues that the Court lacks jurisdiction because Defendant has not adequately shown that the amount in controversy exceeds $5 million. (Mot. at 13.) First, Plaintiff contends that Defendant's calculations are inadmissible. (Id.) This Court has previously rejected the argument Plaintiff's counsel makes here. See, e.g., Terrell v. Samuel, Son & Co. (USA), 2020 WL 2797299, at *2 (C.D. Cal. May 29, 2020). Second, Plaintiff argues that Defendant's violation rate assumptions are speculative and unsupported by Plaintiff's allegations. (Mot. at 16.)

With respect to estimating the violation rate for wage statement violations at 100%, along with estimating that 100% of the 740 separated employees are entitled to the maximum 30 days of waiting time penalties, that is entirely in line with holdings by courts in this district. See Lucas v. Michael Kors (USA), Inc., 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018); Alfaro v. Banter by Piercing Pagoda, 2022 WL 1284823, at *3 (C.D. Cal. Apr. 29, 2022). Plaintiff's allegation that the violations occurred "regularly" and "frequently" as part of a "pattern and practice" without more do not counsel toward reducing the estimated violation rate. Plaintiff's Counsel also attempts to claim that the allegations in Epps v. Nat'l Distribution Ctrs., LLC of violations occurring "sometimes" are comparable to Plaintiff's allegations of violations occurring "frequently" and "regularly"; the suggestion that those words are analogous or even remotely similar is ridiculous—they are essentially opposites. 2025 U.S. Dist. LEXIS 141114, at *18-19 (C.D. Cal. July 23, 2025).

Plaintiff also takes issue with Defendant estimating the meal period and rest period violation rates when Defendant "possesses actual data showing whether meal breaks were

---

[1] The district court cases to which Plaintiff cites are unpersuasive given the clear language of Roth, which is binding Ninth Circuit precedent.

provided." (Mot. at 17.) But Defendant is not obligated to prove Plaintiff's case for him in defense of a motion for remand by essentially admitting the meal and rest break periods in its records. Defendant instead makes an estimation in line with—and in fact below—what this Court and others have accepted. See, e.g., Hill v. Hogan Pers., LLC, 2025 WL 1898255, at *6 (C.D. Cal. July 9, 2025); Baker v. Propak Logistics, Inc., 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019). Epps rejected an assumption where data was "easily and reliably determined from [defendant's] own records," but that was in the context of counting putative class members, not essentially proving the violation rate at this stage based on Defendant's meal and rest break data. 2025 U.S. Dist. LEXIS 141114, at *18.

Further, Plaintiff takes issue with Defendant's calculation of "unique shifts" without precisely defining that term. (Mot. at 19.) This is because, Plaintiff contends, "California employees commonly work split shifts or have multiple punch pairs per day." (Id.) Plaintiff himself was Defendant's employee and presumably knows if he—or others he wishes to represent—worked split shifts or had multiple punch pairs per day. *He* could have alleged as much, or responded to Defendant's declaration with a contention that such practices occurred during his employment. But Plaintiff chose not to do so, and the evidentiary burden is not limited to Defendant. Dart Cherokee is clear that, once a motion for remand is in play, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 574 U.S. at 88. Here, Plaintiff has offered no declaration indicating that "unique shifts" might involve split shifts or multiple punch pairs, thus leading to an overstated amount in controversy.

The language in Plaintiff's Complaint certainly "could support a lower violation rate as easily as it could support the violation rate that [Defendant] assumed. But that does not automatically render the rate assumed by [Defendant] unreasonable. And if [Plaintiff] believed that some other assumption would have been *more* reasonable, [he] was free to propose that rate. ([He] was also free to use some more specific phrase[s] . . . when drafting the complaint; had [he] done so, [he] could have constrained the range of assumptions that [Defendant] could reasonably adopt.)" Perez v. Rose Hills Co., 131 F.4th 804, 810 (9th Cir. 2025). As it stands, however, the amount in controversy as alleged by Defendant is sufficient to support removal.

Plaintiff chose to take a broad, unspecific approach to pleading, and did not provide alternative violation rates, much less offer a declaration supporting such rates. Finally, Plaintiff's Reply for the first time raises arguments regarding the calculation of estimated attorneys' fees. The Court notes that Plaintiff did not raise such arguments in his Motion. In any event, even if the Court were to entertain the arguments regarding such fees in the Reply, Defendant's calculations well exceed the threshold for removal even without such fees. As such, the Motion is **DENIED**.

## IV.   CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's Motion.  The Court **DENIES-AS-MOOT** Defendant's Ex Parte Application.  The March 23, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**